IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL R. BARNETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. 1:06cv424-WC |
| MICHAEL J. ASTRUE, ) | |
| ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

The claimant herein, Michael R. Barnette, filed an application for SSDI and SSI benefits pursuant to 42 U.S.C. §§ 401, *et seq.,* alleging disability as of October 1, 2003.  Claimant's applications were denied on August 30, 2004.  In a hearing held on October 18, 2005, the Administrative Law Judge ("ALJ") found in pertinent part that: (1) the claimant's lumbar and cervical degenerative disc disease were considered "severe" based on requirements in the Regulations 20, C.F.R § 404.1520(c), (2) the medically determinable lumbar and cervical impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, (3) the claimant was unable to perform any of his past relevant work, (4) the claimant had no transferable skills from any past relevant work, (5) but that the claimant had the residual functional capacity ("RFC") to perform a significant range of medium

work pursuant to 20 C.F.R § 404.1567, and therefore, (6) was not under a "disability" as defined in the Social Security Act at any time through the date of the decision, November 23, 2005. (TR 16-17)  The Appeals Council denied review on March 10, 2006, rendering the ALJ's decision as the final decision of the Commissioner. (TR 3-5)  Claimant now seeks review of the Commission's decision pursuant to 42 U.S.C. § 405(g).  Both parties have consented to review by this Court. (Docs. #8 & 9)

## II. STANDARD OF REVIEW

Findings of fact by the Commissioner are final if supported by substantial evidence.  42 U.S.C. § 405(g); *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999).  Substantial evidence is that which a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Appellate scrutiny encompasses a review of the record as a whole, including all the evidence in favor and against the ALJ's conclusions.  *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986).  While this Court's review of the ALJ's findings of fact is limited by the substantial evidence standard, review of the ALJ's application of the law is plenary.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).

When determining whether a claimant is disabled, the hearing officer must employ a five-step evaluation process.  20 C.F.R. § 404.1520.   The claimant bears the burden of proving the following:  (1) whether he is currently performing a substantial gainful activity, (2) whether he has a severe impairment, (3) whether that severe impairment meets or exceeds an impairment in

the listings, and (4) whether he can perform his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). When a claimant carries Steps 1 through 4, he establishes a *prima facie* case of qualifying disability. At the fifth step, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform considering his residual functional capacity. *Id*.

### III.  ADMINISTRATIVE DECISION

In the instant case, the ALJ utilized the five-step, burden-shifting analysis of 20 C.F.R. § 404.1520 to determine if the claimant was disabled. The ALJ found that claimant was not performing any substantial gainful activity, and that claimant's neck and lower back impairments are of the level of a "severe" impairment, though the ALJ also found that he did not meet or exceed an impairment in the administrative listings in Appendix 1, Subpart P, Regulation No. 4 of the Social Security Disability Act. Thus, at Step 3, claimant had not proved a *prima facie* case of qualifying disability. However, in Step 4, the ALJ found that claimant *could not* perform his past relevant work. (TR 15) While this step requires a determination as to claimant's RFC, the ALJ did not specifically explain claimant's limitations.[1] We thus turn our focus towards Issue II

---

[1] As to Issue I of claimant's brief on appeal, this Court agrees the ALJ's decision regarding alcoholism is confusing. On the one hand, the ALJ found "that the claimant's alcoholism is a contributing factor material to the determination of disability" (TR 11), but, in the body of his decision, the ALJ found that "in view of the lack of evidence indicating that the claimant's abuse of alcohol has lasted a continuous period of not less than 12 months, the undersigned finds this to be an acute episode and not a severe impairment." (TR 12) It is true that the Social Security Act was amended to direct the termination or denial of benefits to individual for whom alcoholism is a contributing fact material to a finding of disability. Public Law No. 104-121. Claimant bears the burden of disproving the materiality of alcohol's contribution to his disability determination. *Doughty v Apfel*, 245 F.2d 1274, 1281 (11th Cir. 2001). However, alcohol use is a contributing factor material to the determination of disability when it forms the exclusive basis for finding disability. *Englert v. Apfel,* Case No. 97-1526-CIV-ORL-18C,1999 WL 1289472 at *8, n. 3 (M.D. Fla. June 16, 1999) (unpublished opinion). "If there are other grounds for

in claimant's brief on appeal which states, in essence: *Was the Commisioner's RFC assessment arbitrary and not supported by substantial evidence?*

A claimant's RFC is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). This assessment is based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). If the individual has more than one impairment, the fact finder is required to consider all of the claimant's medically determinable impairments, including any that are not "severe." 20 C.F.R. § 404.1545(a)(2). The evidence used to assess RFC is based on all of the relevant medical and other evidence, including that supplied by claimant. But the finder of fact is responsible for developing the complete medical history, "including arranging for a consultative examination(s) if necessary." 20 C.F.R. § 404.1545(a)(3). Descriptions and observations of claimant's limitations are also considered in the RFC evaluation, including any symptoms such as pain, 20 C.F.R. § 404.1545(a)(3), as well as the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(1)(4). In the instant case, the ALJ found claimant capable of performing a significant range of medium work. This Court finds no evidence in the record to support the ALJ's determination as to claimant's ability to perform at this level of exertion.

The ALJ states as follows regarding his assessment:

---

finding the claimant disabled, then drugs and alcohol, are not a contributing factor material to the determination of disability." *Id., citing* 20 C.F.R. § 404.1535(b)(2)(ii). In the instant case, the ALJ found that there was insufficient evidence that claimant's alcohol abuse was severe, and there was no finding that claimant's alcohol abuse was the exclusive basis for the finding of disability. Rather, the ALJ focused on claimant's lumbar and cervical conditions (TR 12), and found that these conditions rendered claimant unable to perform his past relevant work. (TR 13)

4

> The claimant testified as to having extreme symptoms and limitations in that he experiences constant neck and back pain. He alleges that he has pain that goes down his legs and has numbness in his feet. The claimant indicated that he can only walk about 30 minutes and lift 10 to 15 pounds. He noted that he can sit about 30 minutes. (TR 13)
>
> The objective findings and treatment do not support the claimant's testimony of experiencing such disabling pain and limitations. He has received conservative medical treatment, which is not consistent with his extreme allegations. The claimant testified that he lacks the means to get treatment. However, prior to the claimant's inability to pay for medical care the record indicates that his treatment was conservative which level of care is inconsistent with the extreme symptoms and limitations alleged. (TR 13)
>
> Based upon the claimant's residual functional capacity [RFC], he is capable of performing a significant range of medium work as defined in 20 CFR §§ 404.1567 and 416.967. (TR 15)
>
> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he can also do sedentary and light work. (TR 15)

The ALJ bases these conclusions largely on the testimony of Dr. Robert W. Moore, Jr., M.D., Dr. J. Paul Maddox, M.D., and the records from Flowers Hospital and Southern Bone & Joint Specialists, P.C. The last treatment record to which the ALJ referred is a visit to Dr. Maddox on June 15, 2004. Beyond that, claimant had no other treatment for his back because of financial difficulties. (TR 13)

In viewing the medical records as a whole, this Court notes the following documentation of claimant's condition in the medical records. Pursuant to the records from Southeast Alabama Medical Center, claimant was admitted on November 21, 2002, for an automobile accident

wherein he was broad-sided (TR 149), and sprained his neck and fractured his sternum. (Tr 154) On March 23, 2004, plaintiff first saw Dr. Moore, for a "pinched sciatic nerve" allegedly caused by his helping some relatives "do remodeling," increasing his pain. He was prescribed a coritsone dosepak followed by nonsteroidal medication. (TR 161) On March 30, 2004, claimant had a markedly positive straight leg raising test. Physical therapy, exercise and anti-inflammatory medication were recommended. (TR 160) On May 11, 2004, he was not making any improvement, could only stand for 20 minutes at a time and still had a markedly positive straight leg raising test. (TR 160) On May 31, 2004, claimant saw Dr. Maddox, and it was noted that claimant was upset that he was not making much improvement, and could only stand up about 20 minutes before experiencing "a lot of pain in his legs." Dr. Maddox interpreted the MRI as showing some stenosis and also an anterior herniation or bulging of the L3-4 disc. (TR 159) On June 7, 2004, claimant was admitted by Dr. Moore to Flower Hospital for an epidural steroid injection after complaining of back pain with radiation to the left hip and left lower extremity.

According to the Flower Hospital records, claimant indicated he had been experiencing the symptom for approximately one year. (TR 156) He was released with the instructions to continue home medications. (TR 157) On June 15, 2004, Dr. Maddox noted that claimant had complained of left sciatica for approximately one year. Claimant complained of left buttock pain with some symptoms into the calf and into the foot on that same side. Reflexes were intact with good strength. Straight leg raising "was somewhat uncomfortable" on that side. Dr. Maddox noted a small focal disc protrusion at L5-S1 on the symptomatic side. (TR 159), and noted

improved symptoms at midline with the prior epidural injection, but indicated that if claimant's current symptoms persisted, that a left sided foraminal epidural may be recommended. (TR 159) There were no further records after this point, except for records pertaining to gastrointestinal bleeding[2] on September 21 2005.  Hearing was held on October 18, 2005. (TR 198)  Plaintiff testified that his severe lumbar symptons continued causing specific physiological limitations (TR 208, 212-13), and affecting his sleep. (TR 208)  He also testified that he has no income (TR 205), and it was established he is uninsured. (TR 208)

This Court finds that there was substantial evidence in the record to support the ALJ's finding that claimant's lumbar and cervical degenerative disc disease were "severe" per 20 C.F.R § 404.1520(c), and that claimant, as a result, was unable to perform his past relevant work[3] per 20 C.F.R § 404.1565. (TR 16-17)

However, this Court also finds an abject lack of evidence in the record to support the blanket statement of the ALJ that claimant is "capable of performing a significant range of medium work," which is a necessary determination before reaching the Step 5 analysis of assessing whether there exist work in the national economy that claimant can perform.  The ALJ found plaintiff's testimony to be "not credible" regarding his ability to walk and stand for only 20 minutes or less (TR 14-15), yet the only other assessment as to claimant's function contained in the record is in the assessment performed by Disability Specialist, LeAnn Hill, at the state agency

---

[2] While the ALJ does not find this condition to be "severe," (TR 12) he must still take it into account for purposes of determining claimant's non-exertional limitations.  SSR 96-4, 61 Fed.Reg. 34488 (July 2, 1996).

[3] Claimant's past relevant work was determined to be heavy exertion and semi-skilled. (TR 15)

level. She found that claimant is capable of occasionally lifting and/or carrying up to 20 pounds, frequently lifting and/or carrying up to 10 pounds, standing and/or walking about 6 hours in an 8-hour workday and sitting about 6 hours in an 8-hour workday.[4] (TR 126). Ms. Hill reviewed a "Physical Activities Questionnaire" completed by claimant that corroborated much of claimant's hearing testimony (TR 106-111), yet this form is incomplete as to claimant residual function abilities. (TR 115-118, 122) There are other statements by claimant made to the doctors who treated claimant, but Dr. Maddox's and Dr. Moore's records do not specifically address the issue of claimant's functional limitations.

It *was* documented in the record that plaintiff had a positive straight leg raising test on more than one occasion (TR 160), positive findings on MRI (showing a herniated disc at L2-3; though Dr. Maddox noted a small focal disc protrusion at L5-S1, and also an anterior herniation or bulging of the L3-4 disc.) (TR 159, 166), mild spinal stenosis at multiple lumbar level (TR 166),[5] and degenerative disc disease at both the cervical and lumbar levels. (TR 159-160) In addition, claimant's testimony at the hearing regarding his inability to stand for more than 20 minutes without pain is consistent with the history given to both the doctors and staff at Flowers Hospital and Southern Bone and Joint Specialists, P.C., and, in addition, Dr. Maddox finds "symptoms of left sciatica. . ." upon his examination. (TR 159) All of these are objective finding, or at least, potentially, have an objective component.

---

[4]This Court notes that the finding by Disability Specialist Hill was based on only a partially filled out form. (*See*, TR 122-123)

[5]The ALJ indicated that the claimant has no evidence of . . .lumbar spine stenosis. . ." which is inconsistent with the objective findings on MRI. (TR 166)

Even discounting claimant testimony at the hearing, the history in the medical records and the absence of any testimony to the contrary leads this Court to conclude that there was a paucity of evidence to sustain the ALJ's finding regarding claimant's RFC, and no evidence to support that claimant retained the ability to perform a significant range of medium work. (TR 15)  That claimant "has been effectively maintained with conservative care" (TR 13-14), does not eliminate his severe conditions, nor does it provide evidence towards his functional abilities.

This Court agrees with defendant, in this case, that the testimony of the vocational witness did not supply a sufficient basis to determine claimant's functional limitations, and the ALJ is not qualified to make unsupported assertions as to plaintiff's physical capabilities without some basis for doing so.  See *Thomason v. Barnhart*, 344  F. Supp. 2d 1326 (N.D. Ala. 2004); *Coleman v.  Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003); *Manso-Pizarro  v. Secretary of Health and Human  Services*, 76 F.3d 15 (1st Cir. 1996).  In *Coleman*, the court found it unclear how:

> . . .the ALJ found plaintiff could meet the threshold physical requirements of medium work, in absence of a physical capacities evaluation ("PCE") completed by a treating or examining physician, particularly in light of plaintiff's numerous severe impairments.  This Court has held on a number of occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence, or by the residual functional capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician." *Coleman,* 264 F. Supp. 2d. at 1010.

The ALJ must articulate what the claimant's exertional limitations are, and why they allow him to perform the full range of medium, light or sedentary work *before* applying the

Medical-Vocational Guidelines. *Phillips v. Barnhart*, 357 F.2d 1232, 1243-44 (11th Cir. 2004). The hypothetical question also must address all of claimant's exertional and non-exertional limitations (TR 168), or must also fail as not being supported by substantial evidence. *Coleman,* 264 F. Supp. 2d at 1011. Since the ALJ did not have sufficient evidence in the record to make a proper RFC determination, it was incumbent upon him to re-contact the treating physicians to obtain the necessary information, 20 C.F.R. § 404.1512 (e) (1), or order a consultative examination. 20 C.F.R. § 404.1512(f).

### IV.  CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner is due to be REVERSED, and the case REMANDED to the Commissioner for further proceedings consistent with this opinion.  A separate order will issue.

DONE this 27th day of March, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE